## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| **TEXTRON FINANCIAL CORPORATION,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **No. 3:09-cv-926-JPG-PMF** |
| **v.** | ) | |
| | ) | |
| **SHILOH VALLEY EQUIPMENT CO.,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## <u>MEMORANDUM AND ORDER</u>

This matter comes before the Court on plaintiff Textron Financial Corporation's ("Textron") motion to strike defendant Shiloh Valley Equipment Co.'s ("Shiloh Valley") jury demand on its counterclaim (Doc. 22). Shiloh Valley has responded to the motion (Doc. 26) and Textron has replied to that response (Doc. 31).

## I.    Background

This suit stems from a security agreement ("Security Agreement") signed by both parties under which Textron extended credit to Shiloh Valley so Shiloh Valley could purchase farm machinery and equipment for retail sale. As might be expected, in exchange for providing financing, Textron took a security interest in the machinery and equipment Shiloh Valley acquired. Textron filed this lawsuit after Shiloh Valley allegedly defaulted on the loan and refused to pay amounts due or allow Textron to have possession of the secured collateral.

Shiloh Valley filed a counterclaim charging that Textron made misstatements regarding the contents and effect of the Security Agreement upon which Shiloh Valley reasonably relied in deciding to sign the document. Specifically, Shiloh Valley alleges that prior to the execution of the Security Agreement it had an arrangement with Redball, a manufacturer of farm machinery and equipment, under which it did not have to pay Redball for providing inventory until after

Shiloh Valley sold that inventory.  When Redball encountered financial difficulty, it instructed

Shiloh Valley to may payments directly to Textron instead of Redball.  Textron then told Shiloh

Valley that

> in order to be able to process the payments that Shiloh Valley would be sending
> to Textron when it sold a piece of Redball equipment to a retail customer Shiloh
> Valley needed to sign some 'documents.'  Textron represented that it was fully
> aware of the agreements that Redball and Shiloh Valley had with regards to the
> Redball equipment and that the 'documents' were merely needed so that Textron
> could properly credit Redball's account with the payments from Shiloh Valley.

Counterclaim, ¶ 14.  Shiloh Valley demanded a jury on its counterclaim.

Textron moved to strike the jury demand on the basis that the Security Agreement

contained a waiver of the right to a jury trial:

> To the extent permitted by law, each party hereto, following consultation with
> legal counsel, KNOWINGLY AND VOLUNTARILY WAIVES ITS JURY
> TRIAL RIGHTS WITH REGARD TO DISPUTES IN ANY WAY DIRECTLY
> AND/OR INDIRECTLY ARISING OUT OF OR IN ANY WAY CONNECTED
> WITH THIS AGREEMENT.  THE PARTIES ACKNOWLEDGE THAT THIS
> WAIVER IS A MATERIAL INDUCEMENT TO ENTER INTO A BUSINESS
> RELATIONSHIP, THAT EACH HAS RELIED ON THE WAIVER IN
> ENTERING INTO THIS AGREEMENT, AND THAT EACH WILL
> CONTINUE TO RELY ON THE WAIVER IN THEIR RELATED FUTURE
> DEALINGS.

Security Agreement, ¶ 16.  Shiloh Valley argues the jury waiver is void because it did not

knowingly and voluntarily waive its right to a jury trial.  It further argues that it is not bound by

the jury waiver because its signature on the Security Agreement was procured by "fraud in the

factum."

## II.   Analysis

Both parties agree that the Seventh Amendment right to a jury trial can be waived.  *See*

*Stewart v. RCA Corp.*, 790 F.2d 624, 630 (7th Cir. 1986) (by consent);  *IFC Credit Corp. v.*

*United Bus. & Indus. Fed. Credit Union*, 512 F.3d 989, 991-94 (7th Cir. 2008) (by a valid

contract).  Where parties waive the right by contract, as they appear to have done in this case, the validity of the waiver is determined based on the law applicable to the rest of the dispute.  *IFC Credit*, 512 F.3d at 991-92 (citing *Abbott Labs. v. Takeda Pharm. Co.*, 476 F.3d 421, 423 (7th Cir. 2007)).  Shiloh Valley contends Illinois law applies to this dispute despite the existence of a choice of law provision specifying Rhode Island law.  The Court assumes without deciding that Illinois law applies because even if Shiloh Valley is correct, it is still bound by its jury trial waiver.

Shiloh Valley cites two district court cases from the Northern District of Illinois law recognizing a presumption in Illinois law against enforcing jury trial waivers unless the waiver was knowing and voluntary.  *See Heller Fin. Leasing, Inc. v. Gordon*, No. 03 C 6326, 2004 WL 2806458, * 6 (N.D. Ill. Dec. 2, 2004) (finding waiver valid);  *Whirlpool Fin. Corp. v. Sevaux*, 866 F. Supp. 1102, 1105 (N.D. Ill. 1994) (finding waiver invalid).  However, the Seventh Circuit Court of Appeals rejected such a presumption in *IFC Credit Corp. v. United Business and Industrial Federal Credit Union*, 512 F.3d 989, 993 (7th Cir. 2008).  In that case, the Court of Appeals noted, if a party can forfeit the right to a jury trial by inadvertently failing to demand one under Federal Rule of Civil Procedure 38(b), *see* Fed. R. Civ. P. 38(d), there is no "knowing and voluntary" requirement and it can also forfeit that right by unknowingly subscribing to a jury waiver clause in a contract.  *See IFC Credit*, 512 F.3d at 993.  Thus, it held jury waiver clauses should be treated like arbitration or forum selection clauses, which do not require additional evidence showing that a party knowingly and voluntarily agreed to them.  *Id.* at 994.

Shiloh Valley also argues the Security Agreement was procured by "fraud in the factum" or "fraud in the execution," that is, that it signed the Security Agreement reasonably thinking it to be something else entirely.  This would void the Security Agreement and the jury waiver

3

clause within it.  *See id.*; *see also Laborers' Pension Fund v. A&C Envtl., Inc.*, 301 F.3d 768, 779 (7th Cir. 2002).  In order to establish "fraud in the execution," a party must show that it did not know the true nature of the agreement it was signing and that it reasonably relied on the representations of the other party as to the nature of the agreement.  *Laborers' Pension Fund*, 301 F.3d at 780.

Here, even if everything Shiloh Valley says is true – that Textron misrepresented the nature of the Security Agreement as simply a document needed to properly credit Redball's account with Textron – no reasonable factfinder could find that Shiloh Valley reasonably relied on Textron's statements.  Reliance was unreasonable in light of the fact that immediately above Shiloh Valley's signature line was an indication that Shiloh Valley was the "debtor," and immediately to the left of that was an indication that Textron was the "secured party."  This should have tipped off Shiloh Valley's signatory that the agreement was likely a security agreement and more than a simple payment processing agreement.  Indeed, the document was four pages long and would have led a reasonable person to read it to see what was in those four pages.  Furthermore, less than two inches above Shiloh Valley's signature line was the jury waiver language printed in all capital letters.  Clearly, even to someone glancing in the vicinity of the signature lines, this document would appear to be something of substance that waived valuable rights, not just information to facilitate application of a payment.

Shiloh Valley has not alleged any circumstance that would render reasonable its reliance on Textron's misrepresentation and its failure to read the Security Agreement to discover its true nature.  *See Laborers' Pension Fund*, 301 F.3d at 781 (no reasonable basis for reliance on misrepresentation where business owner failed to read contract to determine its contents).  That it chose not to read the contract before signing it did not render it void.  *See Hill v. Gateway*

4

*2000, Inc.*, 105 F.3d 1147, 1148 (7th Cir. 1997) ("A contract need not be read to be effective; people who accept take the risk that the unread terms may in retrospect prove unwelcome."); *Paper Express, Ltd. v. Pfankuch Maschinen GmbH*, 972 F.2d 753, 757 (7th Cir. 1992) ("[I]t is a fundamental principle of contract law that a person who signs a contract is presumed to know its terms and consents to be bound by them.").

In sum, Shiloh Valley has failed to allege anything that, if true, would show that its signature on the Security Agreement was procured by "fraud in the execution" such that the jury waiver in the Security Agreement would be void.

## III.   Conclusion

For the foregoing reasons, the Court **GRANTS** Textron's motion to strike Shiloh Valley's jury demand (Doc. 22) and **STRIKES** the jury demand contained in Shiloh Valley's counterclaim (Doc. 11).

**IT IS SO ORDERED.**
**DATED:  April 1, 2010.**


                                        s/ J. Phil Gilbert
                                        **United States District Judge**

5